UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL KANTOR, et al.,

Plaintiffs,

v.

BIGTIP, INC., et al.,

Defendants.

CASE NO. C15-1871 MJP

ORDER ON DEFENDANTS'
MOTIONS FOR:
(1) JUDGMENT ON THE
    PLEADINGS
(2) SUMMARY JUDGMENT

The above-entitled Court having received and reviewed:

1. Defendants' Joint Motion for Judgment on the Pleadings (Dkt. No. 144), Plaintiffs'
   Opposition to Defendants' Joint Motion for Judgment on the Pleadings (Dkt. No.
   164), Defendants' Amended Reply in Support of Joint Motion for Judgment on the
   Pleadings (Dkt. No. 202);

2. Defendants WhoToo, Inc. and Matt Rowlen's Joint Motion for Summary Judgment
   (Dkt. No. 146), Defendant BigTip, Inc.'s Joinder (Dkt. No. 149), Plaintiffs'
   Opposition to Joint Motion for Summary Judgment (Dkt. No. 166), Defendants'
   Amended Reply in Support of Joint Motion for Summary Judgment (Dkt. No. 203);

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that Defendants' Motion for Judgment on the Pleadings is PARTIALLY GRANTED and PARTIALLY DENIED.

IT IS FURTHER ORDERED that Defendants' WhoToo, Rowlen, and BigTip's Motion for Summary Judgment is DENIED.

This case is comprised of derivative and direct claims filed by a group of investors against the CEO/founder (Rowlen) of the company in which they invested (BigTip, Inc.), BigTip itself, the next company the CEO formed (WhoToo, Inc.), and the company which bought WhoToo (Demandbase, Inc.).

Motions practice has been vigorous and wide-ranging. This order concerns two motions: a motion for judgment on the pleadings brought by all Defendants and a motion for summary judgment filed by all Defendants except Demandbase (which filed its own summary judgment motion; *see* Order on Demandbase, Inc.'s Motion for Summary Judgment at Dkt. No. 220).

**Background**[1]

In February 2011, Defendant Matt Rowlen ("Rowlen") met with an individual investor, Plaintiff Michael Kantor ("Kantor"), and investors representing the other three Plaintiff investment companies (collectively, "Plaintiffs") and pitched a business enterprise called BigTip, a company intended to connect retailers and consumers for the purpose of distributing discounts. Rowlen represented that he owned a database with at least 100 million email addresses and proposed a retailers-to-consumer connection business model. Based on Rowlen's representations, Plaintiffs made an initial round of investments totaling $575K; the investments took the form of convertible notes. (¶¶ 17-19; Dkt. No. 147-6 – 147-9; Rowlen Decl., Exs. 6-9.)

---

[1] Except where noted, all citations are to Plaintiffs' Second Amended Complaint ("SAC;" Dkt. No. 104). The Court's analysis of the Motion for Judgment on the Pleadings is confined to the allegations of the SAC.

Among the people recruited to the BigTip team was a man named Kevin Marcus. Marcus became BigTip's CTO (Dkt. No. 147, Rowlen Decl. at ¶ 7) and provided BigTip with a large database of consumer emails which he owned through his company Starnium LLC ("the Starnium database"). (Id. at ¶ 9; Dkt. No. 148-11, Cohen Decl., Ex. 50, p. 21.)

By late 2011/early 2012, BigTip was beginning to run out of operating funds. Rowlen stopped taking a salary and advised his employees that BigTip would not be able to make payroll for long. By the second quarter of 2012, BigTip was down to four employees. (Cohen Decl., ¶¶ 11-12, 24; Rowlen Decl., ¶¶ 27-28.)

At some point during 2012, Rowlen formulated an idea for a different business model, a "business to business data intelligence company, providing analytic tools for publishers and marketers" called "WhoToo." (Dkt. No. 146, Motion at 10.) Plaintiffs allege that Rowlen, without their permission, used the resources of BigTip (including its employees) to work on WhoToo while BigTip was still operational. (¶¶ 22-24.) By July of 2012, BigTip was insolvent and no longer in business. As part of the windup of BigTip, several company assets were transferred to Rowlen "in partial exchange for [his] unpaid salary:" (1) the Starnium email database, (2) a business relationship with a client named InfoGroup, and (3) BigTip's website domains. (Motion at 10; Rowlen Decl. at ¶ 36; Dkt. No. 147-32 at 2.)

In August 2012, Rowlen registered WhoToo as a separate company. (Rowlen Decl., ¶ 46.) Rowlen assigned the assets he had received, in turn, to WhoToo. (Dkt 147-32 at 2.) In the beginning of 2013, Plaintiffs received "vague information" that BigTip was no longer operational. (¶¶ 20-21.)

There is evidence that the demise of BigTip was concealed from the Plaintiffs for a period of time. While Defendants admit that "[b]y July 1, 2012, BigTip had no more

employees" (Motion at 9; Cohen Decl. at ¶¶ 11,13), Plaintiffs present evidence that, as late as

September of 2012, BigTip CFO George Bremer ("Bremer") was still communicating with

Plaintiffs as though BigTip was a going concern (albeit one in failing health).  (Dkt. No. 147-23;

Rowlen Decl., Ex. 23 at 1, 3.)  In November, 2012, Rowlen emailed Plaintiffs:

> It is our intent that the investors in BigTip receive their investment + interest back in cash upon closing, but these details are still to be worked out.  While I remain optimistic, we will likely shut down the BigTip operations before the end of the year.

(Dkt. No. 147-25; Rowlen Decl., Ex. 25.)

Plaintiffs allege that, sometime in 2012 or early 2013[2], BigTip's assets (including the

Starnium database) were improperly transferred to WhoToo (and later to Defendant

Demandbase), despite which Rowlen and Bremer[3] continued to represent to Plaintiffs that

BigTip was "solvent and a viable entity with substantial assets."  (¶ 31-32.)  Plaintiffs further

allege that "all or some of the source code and the platform that had been built for BigTip has

been used by WhoToo without any authorization of the investors of BigTip to the ultimate

detriment to the investors of BigTip."  (¶ 33.)

BigTip was "administratively dissolved" as of February 1, 2013.  (Rowen Decl., ¶ 50; Ex.

33.)  On March 12, 2013, Rowlen finally advised Plaintiffs that BigTip was no longer a going

concern.  He emailed them that "BigTip.com went dark and closed operations effective

12/31/12," but represented that "[w]e still have the technology and code."  (Dkt. No. 176-23,

Freeburg Decl., Ex. 23 at 12; Rowen Decl. at ¶¶ 41-42.)

---

[2] The SAC states these dates as "sometime in 2014 or early 2015" (SAC at ¶ 31); the Court is convinced this is a mistake or an oversight based on the qualifying language in the allegations ("…the assets of BigTip were improperly transferred to WhoToo sometime in 2014 or early 2015, *either occurring while BigTip was insolvent and/or thereby effectively rendering BigTip insolvent*")(emphasis supplied).  Since BigTip was indisputably insolvent by 2012 and officially dissolved by 2013, the dates alleged in the SAC are clearly in error.

[3] Bremer was dismissed as a Defendant earlier in the litigation.

Defendant Demandbase, Inc. acquired WhoToo (the parties disagree as to the date – Rowlen says it was in August of 2015, the SAC says September 2015 [¶ 34], and Plaintiffs claim it was January 2015).  (Dkt. No. 176-11, Ex. 11 at 19.) The parties disagree about the acquisition price: Plaintiffs claim the merger price was $13 million in cash and stock (Dkt. No. 164 at 6), Demandbase asserts that the figure was "approximately $7,430,000."  (Dkt. No. 139 at 3.) Plaintiffs also maintain that Demandbase acquired all the assets and liabilities of WhoToo; those assets allegedly included the IP and source code improperly transferred from BigTip to WhoToo. (¶ 35.)

**Discussion**

**Motion for Judgment on the Pleadings**

*Standard of Review*

Motions for judgment on the pleadings are governed by FRCP 12(c); because 12(c) motions are "functionally identical" to Rule 12(b)(6) motions, the 12(b)(6) legal standard is applied.  Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  A complaint may be dismissed under this standard if it fails to state a cognizable legal theory or does not allege facts sufficient to support a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

The Court will apply the pleading standard announced in Iqbal/Twombly: a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic. Corp. v.Twombly, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S.  at 570 (citing   5 Wright & Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d

ed. 2004).  Adequately stating grounds for relief "requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Conley v. Gibson, 355 U.S. 41, 46-47 (1957)).

*Timeliness*

Plaintiffs attack the 12(c) motion as untimely, and the Court is sympathetic to their point. While standing to sue (which is what this 12(c) motion attacks) is an issue which can be raised at any time, even the language of FRCP 12(c) says a motion should be brought "[a]fter the pleadings are closed – but early enough not to delay trial."  Under most circumstances, an order granting such a motion would allow a plaintiff an opportunity to amend – with trial set for April 16, 2018, this matter is clearly past the point where amendment can be permitted without delaying trial.  The Court is only dismissing claims pursuant to this 12(c) motion where amendment would be futile.

For purposes of the 12(c) motion, Defendants divide Plaintiffs' claims into two categories – derivative and fraud-based – and the Court will analyze the arguments using that dichotomy.

*Derivative causes of action*

Defendants assert that Plaintiffs' claims for conversion (Fifth Cause of Action), breach of fiduciary duty (Sixth Cause of Action), unjust enrichment (Seventh Cause of Action), fraudulent conveyance (Eighth Cause of Action), and declaratory judgment (Tenth Cause of Action) are derivative causes of action which Plaintiffs have no standing to assert.  It is the law in the State of Washington that

> [s]tanding to bring a stockholder derivative claim requires a proprietary interest in the corporation whose right is asserted. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 735-36 (3d Cir. 1970), *cert. denied*, 401 U.S. 974 (1971).  A creditor has no equitable standing to sue derivatively.

Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 149 (1987).

a. Conversion

Plaintiffs' SAC alleges that "Defendants stole, misappropriated, and converted BigTip's equipment, inventory and assets and gave them to WhoToo. WhoToo subsequently transferred all of its assets to Demandbase." (SAC, ¶ 63.) The claim is founded on the existence of some proprietary interest in the assets of BigTip, a proprietary interest in the corporation for which this group of investors (whose notes were never converted into BigTip stock) has provided no legal justification, either from the terms of their investment agreements, state or federal statute, or case law.

The 12(c) motion will be GRANTED as to this claim; since Plaintiffs will never be able to allege a proprietary interest in the assets of the corporation, amendment would be futile and the dismissal will be with prejudice.

b. Breach of fiduciary duty

As a general rule, corporations and their officers owe no fiduciary duty to the corporation's creditors. Haberman, 109 Wn.2d at 109.

However, there is case law (cited by the judge who formerly presided over this case; *see* Kantor v. BigTip, 2016 WL 4193861, at *4) that corporate officers or directors own a fiduciary duty to creditors once the corporation becomes insolvent. "That duty, in essence, is to use the remaining corporate assets for the benefit of creditors." Textron Fin. Corp. v. Underwood (In re Underwood), 2004 Bankr. LEXIS 1461, *12 (E.D. Wash. 2004)(citing In re Jacks, 266 B.R. 728, 738 (U.S. BAP, 9th Cir. 2001)). Rowlen admitted that he assigned himself several corporate assets at the point that BigTip was on the brink of insolvency as compensation for the fact that he had been working without pay for a period of time. (Mtn. at 10; Rowlen Decl. at ¶ 36; Dkt. No.

147-32 at 2.) If proven, this could be found to be a breach of his fiduciary duty to the creditors under Textron.

The Court acknowledges that this portion of the ruling creates somewhat of a jurisprudential bind.  The SAC does not allege the transfer of BigTip's assets to Rowlen as part of the fiduciary breach claim.  The evidence of Rowlen's receipt of the BigTip assets was developed during the discovery/deposition process.  The legal impact of that transfer (in terms of the corporation's fiduciary duty to its creditors) was pointed out by U.S. District Judge Richard A. Jones in an earlier ruling, making these facts part of the court record.

This particular motion was filed very late and the trial date is rapidly approaching.  However, the pretrial order – the document which will supersede the complaint – has not yet been signed; no further facts need be developed, therefore the cause of action can be re-stated in the pretrial order (when the pleadings are realigned with the record).   The evidence regarding the transfer of assets to Rowlen at a time of insolvency is there (by Defendants' own admission), it supports a breach of fiduciary duty claim on behalf of the creditors and the Court will allow it to go forward on that basis.

The 12(c) motion is DENIED as to this claim.

c.  Unjust enrichment

Plaintiffs' allegations as to this cause of action fall into two categories.  First, Plaintiffs allege that "Defendants… moved all or some of BigTip's source code and the platform that had been built for BigTip and transferring [*sic*] same to WhoToo without any authorization of the investors to the harm of the investors."  (SAC, ¶ 75.)  This portion of their pleading suffers from the same defect as the cause of action for conversion; namely, no legal basis for a proprietary interest in the assets of BigTip.

However, Plaintiffs go on to assert that "Rowlen… conceived of WhoToo and began working on WhoToo while BigTip was still operating and during the time [he] had fiduciary duties to the investors of BigTip" (id.) and further that "the resources used to create WhoToo were taken from BigTip.  Individuals were being paid to work at BigTip while launching WhoToo."  (Id. at ¶ 76.)

While Plaintiffs had no proprietary interest in the assets of BigTip, they did have a contractual agreement with Rowlen and BigTip that the funds which they invested were to be used for the development, maintenance and improvement of the business in which they had agreed to invest; namely, BigTip.  If, as they allege, those funds were utilized in part for the creation of a business in which they did not invest and from which they would see no return on their investment, Plaintiffs have stated a claim for unjust enrichment upon which relief may be granted.  That claim for unjust enrichment extends to Rowlen, BigTip, and WhoToo,[4] and the 12(c) motion is DENIED to that extent.

d.  Fraudulent conveyance

The Court need only look to the language of the Washington Uniform Fraudulent Transfer Act ("UFTA") to disallow this portion of Defendants' motion:

(1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor

RCW 19.40.041(1)(a).  The cause of action clearly exists for the benefit of creditors such as Plaintiffs and is not dependent on rights derived from "a proprietary interest in the corporation."

---

[4] As reflected in the Order on Demandbase, Inc.'s Motion for Summary Judgment (Dkt. No. 220), Demandbase will be dismissed entirely from this litigation; the grounds are discussed in that order.

It is not a derivative claim and the 12(c) motion is DENIED on that basis. The timing of the transfer and the late disclosures of BigTip's collapse provide sufficient basis to infer that Rowlen's intent was to hinder and/or delay the creditors from realizing the true nature of the situation and effectively asserting their rights and/or remedies.

       e.   Declaratory judgment

The Court is frankly at a loss to understand what, if anything, this cause of action would accomplish for Plaintiffs that their surviving causes of action do not.[5] That was not a ground raised by Defendants, however, and the Court will confine itself to a 12(c) analysis on the grounds asserted.

To the extent that Plaintiffs' request for "a declaration that Defendants reconvey all of BigTip's assets back that are in the hands of others" (SAC at ¶ 94) represents an assertion of a proprietary right in the assets of a corporation, the Court finds that the declaratory judgment is a derivative claim which Plaintiffs have no standing to bring. To that extent, the 12(c) motion regarding this cause of action will be GRANTED.

*Fraud-based claims*

Plaintiffs' fraud-based claims can be found in their First Cause of Action (§ 10(b)/Rule 10b-5), Second Cause of Action (§ 20a), Third Cause of Action (fraud), and Ninth Cause of Action (Washington State Securities Act; "WSSA").

One of the factual predicates for all allegations of fraud in the SAC is the representations made by Rowlen prior to Plaintiffs' original investment; namely, the size and ownership of the

---

[5] Plaintiffs request "a judicial determination of their rights and duties" – what is this entire lawsuit if not "a judicial determination of Plaintiffs' rights and duties"?

database utilized by the business.  WhoToo was not in existence at the time these representations were made; it is unknown whether Demandbase existed at that time, but it is undisputed that it did not make any representations which induced Plaintiffs to invest in BigTip.  Plaintiffs present no legal authority for their standing to assert liability for fraud against entities which were either not in existence or completely uninvolved with the parties at the time of the alleged misrepresentations.  The above-cited causes of action will be dismissed as to these two entities.

Second, as regards Defendants Rowlen and BigTip, the Court finds that, while all four of the above-cited claims have an element of fraud, not all have the same requirements of proof or pleading.  Each must therefore be analyzed separately.

a.  *Common law fraud*

Defendants attack this cause of action on FRCP 9(b) grounds; <u>i.e.</u>, that it is not plead with particularity, advising them of the "who, what, when where, and how" of the violation.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).  It is not a persuasive argument.  Plaintiffs allege the "when" (February 2011), the "who" (Rowlen), the "where" (investor meetings) and the "what" (representations that BigTip (1) owned (2) a database with 100+ million email addresses).  (SAC, ¶¶ 17-20, 43-45.)  The complaint alleges that Rowlen knew the statements were false, that he made them for purposes of inducing Plaintiffs to invest in BigTip, that Plaintiffs relied on the statements and would not have invested had they known they were false.  (<u>Id.</u> at ¶¶ 45-48.)

Defendants challenge the inadequacy of the SAC in terms of alleging "materiality" (<u>i.e.</u>, <u>why</u> did it matter that the database was leased rather than owned) and Plaintiffs do not plead that element in the complaint.  Plaintiff Kantor did, however, produce testimony regarding why a leased database was less valuable/less attractive to an investor than one which is owned outright.

(*See* Dkt. No. 176-9, Kantor Depo at 72, 128-29.)  The Court finds that this is another instance where it can be acknowledged (at this late stage of the proceedings) that if dismissal were granted on this basis, Plaintiffs would clearly be able to amend the complaint to properly allege materiality.  Justice would not be served by delaying the trial to accomplish this formal procedural fix, therefore Defendants 12(c) motion will be denied in this regard.

Defendants argue that proximate cause has not been properly plead.  The Court does not agree.  The SAC states that "[a]s a proximate result of Defendant's fraud… Plaintiffs suffered general damages and special damages, in an amount in excess of $500,000…" (SAC at ¶ 49.) Defendants complain that there is no allegation that BigTip failed <u>because</u> any databases were leased rather than owned, but Plaintiffs are not required to allege a causal connection of that type.  They allege that they relied on a misrepresentation in deciding to invest and that, had they known the truth, they would not have invested.  The company failed and they lost their money; the causal connection between the misrepresentation and their loss is clear and direct.

Defendants' 12(c) motion will be DENIED as to fraud cause of action.

b.  *§ 10(b)/Rule 10b-5*

In addition to the FRCP 9(b) requirements of particularity, Defendants also attack this cause of action for failing to satisfy the pleading requirements of the PSLRA which mandate that the complaint "plead with particularity both falsity and scienter." <u>Ronconi v. Larkin</u>, 253, F.3d 423, 429 (9th Cir. 2001.)  The falsity requirement is really no different than FRCP 9(b) and the Court finds that Plaintiffs have established the complaint's adequacy in that regard.

"Scienter" does entail a further degree of pleading, the allegation of a state of mind reflecting that "the defendants made false or misleading statements either intentionally or with deliberate recklessness." <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 999 (9th Cir.

2009)(citing 15 U.S.C. § 78u-4(b)(2)).  Based on the SAC's allegations that Rowlen (1) knew the statements regarding the database were not true and (2) made the statements "with the intent to induce the investors to detrimentally rely on the fact that BigTip had ownership of 100 million email addresses in their database" (SAC at ¶¶ 44-45), scienter has been alleged here.

Defendants' 12(c) motion will be DENIED as to § 10(b)/Rule 10b-5 claim.

c.  *§ 20(a)*

This statute concerns what is commonly referred to as "control person liability."  For purposes of this 12(c) motion, the Court will confine its analysis to the untenable claim that WhoToo and Demandbase, one of which was not in existence during the lifetime of BigTip and the other of which had no involvement with BigTip at all, could be liable under the legal theory that either organization was a "control person" of BigTip.

The 12(c) motion regarding the § 20(a) claim is GRANTED as to WhoToo and Demandbase.

d.  *Washington State Securities Act*

The language of the WSSA closely tracks the language of Rule 10b-5.  Because the federal securities' claims survive this motion for the reasons stated *supra*, the state securities claim also survives.

Defendants' 12(c) motion will be DENIED as to WSSA claim.

**Motion for Summary Judgment**

*Standard of review*

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Service Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).

*Relief requested*

Defendants Rowlen and WhoToo (joined by BigTip) seek summary judgment dismissing all or part of the following claims:

- Violation of § 10(b) of the 1934 Act and SEC Rule 10b-5 (First Cause of Action)
- Violation of § 20(b) of the 1934 Act (Second Cause of Action)
- Fraud (Third Cause of Action)
- Breach of Contract/Promissory Note (Fourth Cause of Action)
- Conversion (Fifth Cause of Action)
- Breach of Fiduciary Duty (Sixth Cause of Action)
- Unjust Enrichment (Seventh Cause of Action)

- Fraudulent Conveyance (Eighth Cause of Action)
- Violation of the Washington State Securities Act (Ninth Cause of Action)
- Declaratory Judgment (Tenth Cause of Action)

(Dkt. No. 146, Motion for Summary Judgment at 3.)   The Court's analysis of these substantive dispositive arguments will be confined to those claims still remaining in the wake of its ruling *supra* regarding Defendants' motion for judgment on the pleadings.

*Alter ego/corporate disregard*

To pierce the corporate veil requires proof that (1) there was intentional use of the corporate form to violate or evade a duty and (2) such piercing is necessary to prevent an unjustified loss. <u>Meisel v. M&N Modern Hydraulic Press Co.</u>, 97 Wn.2d 403, 410 (1982).

> There must be such a commingling of property rights or interests as to render it apparent that they are intended to function as one, and, further, to regard them as separate would aid the consummation of a fraud or wrong upon others.

<u>J.I. Case Credit Corp. v. Stark</u>, 64 Wn.2d 470, 475 (1964).

Defendants initially attack Plaintiffs' case in this regard for failure to <u>plead</u> alter ego/piercing the veil in their complaint.  First of all, the SAC does allege that "Defendants, and each of them, were the … alter egos and/or employees of their co-defendants."  (SAC at ¶ 11.)  Furthermore, it is not necessary to plead alter ego liability as a separate claim in federal court:

> [F]ederal courts generally find that "[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity."

<u>Oginsky v. Paragon Props. of Costa Rica Ltd. Liab. Co.</u>, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011)(citation omitted).

The Court finds abundant evidence of the intentional use of the corporate form of BigTip to evade duties. Rowlen was the sole director of BigTip, held no formal board meetings, and used his personal funds to cover the company's expenses. (Dkt. No. 176-2; Ex. 2, BigTip Depo at 30:10-18, 34:13-25.) At a point when BigTip was insolvent, Rowlen authorized the transfer to himself of corporate assets in lieu of salary (*see* multiple citations to Rowlen's deposition testimony; Response at 22, n.18), very likely a violation of RCW 7.08.010.[6]

Rowlen's two business enterprises shared a common address and, as established by the testimony of at least two employees who worked for both corporations, Rowlen directed people in the employ of BigTip to work on WhoToo projects months before BigTip finally declared insolvency. The transition between the two corporations was "seamless;" in fact, it appears that BigTip employees were working on WhoToo projects (at Rowlen's direction) long before the creation of WhoToo was formally announced. BigTip exhibited an almost total disregard for the corporate form and, in the process, appears to have used the funds from its investors to develop a completely unrelated business.

Rowlen's motion to be dismissed from the breach of contract claim for violation of the terms of the promissory note which BigTip executed will be DENIED; Plaintiffs will be allowed to proceed on a theory of alter ego liability as regards BigTip and Rowlen. The Court does not find that Plaintiffs have adduced facts sufficient to argue for similar "alter ego" status for WhoToo, however. Plaintiffs have produced no information on the day-to-day operations of WhoToo and (aside from a single *de minimis* financial transaction) no evidence on the treatment

---

[6] "No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all of the assignor's creditors in proportion to the amount of their respective claims."

of finances within the corporation such that the Court can find them entitled to pursue liability

against Rowlen with disregard for WhoToo's corporate form.

The finding regarding possible alter ego liability between Rowlen and BigTip, however, has several implications beyond the possibility of holding Rowlen personally liable for breach of Plaintiffs' investment contracts.  If Plaintiffs may proceed on a theory that Rowlen and BigTip were interchangeable entities, they may also proceed against Defendant WhoToo on their claim for fraudulent conveyance.  "Once the threshold fraudulence has been established, RCW 19.40.081(b)(1) allows for judgment against first transferees."  Thompson v. Hanson, 168 Wn.2d 738, 747 (2009).  Rowlen acknowledged transferring the BigTip email database to WhoToo (see Dkt. No. 176-2, WhoToo Depo, 53:1-2); Plaintiffs will be free to argue that WhoToo is thus the "initial transferee" of the asset and subject to liability under the UFTA.

By the same token, Defendant Demandbase then becomes a "subsequent transferee" and immune from UFTA liability.  This is discussed in greater detail in the Order on Demandbase, Inc.'s Motion for Summary Judgment (Dkt. No. 220).

The Court now turns to a claim-by-claim analysis of the causes of action in relation to the summary judgment request of Defendants Rowlen, BigTip, and WhoToo.

*Violation of § 10(b) of the 1934 Act and SEC Rule 10b-5 (First Cause of Action)*

The only actionable fraud that is plead in the SAC in regards to all Plaintiffs which is relevant to their securities fraud counts is the representations concerning the size and ownership of the email database presented to them in the "courtship phase" of their relationship prior to their initial decision to invest.  Plaintiffs allege that Rowlen misrepresented to them (1) the size

of the database and (2) the fact that it was owned by BigTip[7]; all of the other misrepresentations asserted in the SAC are alleged to have occurred after Plaintiffs' initial investment and thus cannot be actionable as regards the first round of investing by all Plaintiffs.

Faced with Defendants' challenge to their proof, Plaintiffs have been unable to produce evidence tending to prove that the size of the Starnium database was not as represented by Rowlen. However, there is evidence establishing that the database was not owned by Rowlen or BigTip at the time the investment was pitched to Plaintiffs. Rowlen himself states:

> When Kevin Marcus came to BigTip, his company Starnium Holdings, LLC provided BigTip with a database of more than 100 million email addresses. This database has also been referred to as the "Starnium Database." There was no limitation placed on the use of this data and I understood BigTip to become the owner of this asset. Attached as **Exhibit 30** is a true and accurate copy of the contract that was effective June 7, 2011. BigTip purchased this database for $1,500…. It was and is my belief that ownership of the email database provided by Kevin Marcus was transferred to BigTip. This is the only email database BigTip ever acquired outright title to…

(Dkt. No. 147, Rowlen Decl. at ¶ 10.) Exhibit 30 to Rowlen's declaration is in fact a contract executed by Marcus and BigTip formalizing the purchase of the database; it is dated June 7, 2011 (Dkt. No. 151-30 Ex. 30), while the representations upon which Plaintiffs made their initial investments were made in February 2011. Thus it is at least a disputed issue of material fact whether the ownership of the database was as Rowlen is alleged to have represented it to Plaintiffs at the time the investment was pitched. On that basis, the movants are not entitled to summary judgment on this cause of action.

Furthermore, Plaintiff SLM Holdings, Ltd., LLC ("SLM") has further grounds upon which to prosecute this cause of action. This Plaintiff is a party to second investment contract, which was executed on July 20, 2011. Because of the timing of the second investment, SLM has

---

[7] Specifically: "[T]hat BigTip had sole ownership of at least 100 million email addresses in their database." (SAC at ¶¶ 17, 43.)

access to some evidence in support of its position that the other Plaintiffs do not. Between the time of the First and Second Purchase agreements (February 16 – July 20, 2011), Rowlen sent an email to the investors regarding BigTip's revenues and a contract with a business called InfoGroup:

> By leveraging limited usage rights to our massive email database over a six month period we received: BigTip cash compensation of $50,000-$100,000 a month in revenue share from InfoGroup during the term.… the end result is that we'll likely cross over to cash flow positive once InfoGroup's royalty payments kick in.

(Dkt. No. 147-13, Rowlen Decl., Ex. 13 at 2.)   By the admission of both Rowlen and CFO Bremer, this statement was false.  (*See* Dkt. No. 176-1, Freeburg Decl., Ex. 1, Depo of Rowlen at 129:18-130:3; Dkt. No. 176-6, Ex. 6, Depo of Bremer at 56:24-57:16.)

The email was part of an email thread, the thrust of which was an invitation to BigTip's investors to increase their investment (and chance for profit) in the company before the opportunity was made available to additional investors.  SLM alleges (in a responsive pleading to a separate summary judgment filed against it) that this misrepresentation fraudulently induced them to enter into the Second Purchase Agreement.  (Dkt. No. 167 at 7.)  It constitutes a further genuine disputed issue of material fact, the existence of which defeats Defendants' request for summary judgment on this cause of action.

*Violation of § 20(a) of the 1934 Act (Second Cause of Action)*

Defendants lumped this cause of action into the other "securities-related" claims which should be dismissed on the basis that Plaintiffs had no proof of the alleged misrepresentations about the size and/or ownership of the email database.  (*See* Dkt. No. 146, Motion at 3, n.1.)  In

light of the Court's finding *supra*, this is insufficient grounds for a grant of summary judgment and the motion will be denied as to this cause of action.[8]

*Fraud (Third Cause of Action)*

Again, Defendants included this cause of action along with the other claims which they argued should be dismissed on the basis that Plaintiffs had no proof of the alleged misrepresentations about the size and/or ownership of the email database. (Id.) In light of the Court's finding *supra*, this is insufficient grounds for a grant of summary judgment and the motion will also be denied as to this cause of action.

*Conversion (Fifth Cause of Action)*

This claim will be dismissed on the basis that Plaintiffs have no standing to prosecute it. The parties are referred to the Court's ruling on the 12(c) motion *supra*.

*Breach of Fiduciary Duty (Sixth Cause of Action)*

Again, the parties are referred to the Court's ruling on the 12(c) motion *supra*. This claim survives to the extent that corporate officers or directors own a fiduciary duty to creditors once the corporation becomes insolvent. "That duty, in essence, is to use the remaining corporate assets for the benefit of creditors." Textron Fin. Corp., 2004 Bankr. LEXIS 1461, *12 (E.D. Wash. 2004)(citing In re Jacks, 266 B.R. 728, 738 (U.S. BAP, 9th Cir. 2001)). There are issues of material fact concerning whether BigTip's remaining assets were used for the benefits of its creditors upon the insolvency of the corporation.

---

[8] However, the Court remains highly skeptical that, in a lawsuit regarding corporate malfeasance with only one "person" remaining, a viable legal theory for "control person" liability exists. As the parties did not brief this argument, the Court will not rule upon it, but Plaintiffs are cautioned to move forward only on their truly viable causes of action.

1    Defendants devote the bulk of their argument concerning this cause of action to

2    establishing that none of BigTip's assets were worth anything to WhoToo.  Even if that were to

3    be definitively established, it would not foreclose Plaintiffs from recovery on this claim– to the

4    extent that any of BigTip's assets would have (and, by law, should have) been available to

5    mitigate the loss to the investors caused by BigTip's insolvency, they should have been utilized

6    to that end, and the fact that those assets were or were not of ultimate value to WhoToo is

7    irrelevant.

8        What is relevant is whether BigTip assets were transferred to WhoToo at all, as opposed

9    to being sold off to repay some portion of Plaintiffs' (and other creditors') investment in BigTip.

10   From that perspective, it is not just the transfer of IP assets (like databases, source codes, etc.)

11   which is legally significant, but the fact that there is evidence that BigTip's material

12   infrastructure (desks, chairs, computers, phones, etc.) simply became the property of WhoToo

13   the day that BigTip ceased to exist.  One BigTip/WhoToo employee testified that there was a

14   "seamless transition" between the end of BigTip and birth of WhoToo – no change in physical

15   location, work computers or work assignments.  See Dkt. No. 176-4, Depo. of Michael Shannon

16   at 53-57, 95).   Another testified that, on the day following their signing of termination letters

17   with BigTip, "we showed up at work and continued to work on the exact same projects, drawing

18   the exact same salary, without any difference in our daily work."  (Dkt. No. 172, Decl. of

19   Johannes Wong at ¶ 8.)

20       On that basis, Defendants' motion for summary judgment on this cause of action will be

21   DENIED.

22

23

24

_Unjust Enrichment (Seventh Cause of Action)_

As discussed in the analysis of Defendants' 12(c) motion _supra_, a portion of this claim is based on allegations that

> Rowlen… conceived of WhoToo and began working on WhoToo while BigTip was still operating… the resources used to create WhoToo were taken from BigTip. Individuals were being paid to work at BigTip while launching WhoToo.

(SAC at ¶¶ 75-76.) Plaintiffs have adduced sufficient evidence on this claim to survive a summary judgment motion. Testimony from a former BigTip employee establishes that Rowlen had begun talking about "pivoting" business models by January of 2012. (Dkt. No. 176-4; Shannon Depo, 24:23-25:24:10.) There is testimony from at least two former employees of BigTip that Rowlen directed them during the first half of 2012 to begin working on products for the new company.[9]

Defendants' motion for summary judgment on this cause of action will be DENIED.

_Fraudulent Conveyance (Eighth Cause of Action)_

In addition to the analysis of this cause of action in the context of Defendants' 12(c) motion, the Court also incorporates the reasoning applied to Plaintiffs' Sixth Cause of Action (breach of fiduciary duty). Defendants challenge this claim on the basis that (1) some of the assets (the source code and platform IP) claimed to have been transferred to WhoToo were not transferred and (2) to the extent that any assets (e.g., the email database) were transferred, they were of no value to WhoToo. As above, the issue is whether any assets which could have been used in satisfaction of Rowlen/BigTip's debt to Plaintiffs and other creditors was conveyed to

---

[9] Michael Shannon testified that (following the departure of two employees in January and February 2012), he began working on "data collection" and "website crawling" that was intended for use by WhoToo; former employee Johannes Wong spoke unequivocally of being directed to refocus his work on products for WhoToo in the first half of 2012 (Wong Decl. at ¶¶ 3-11).

WhoToo.  Plaintiffs' evidence certainly creates an issue of material fact that this may have been the case.

For that reason, Defendants' request for summary judgment regarding this cause of action will be DENIED as to Rowlen, BigTip and WhoToo (*see* discussion of "alter ego" theory of liability *supra* for a discussion of WhoToo's status as the "initial transferee" for purposes of UFTA analysis).

*Violation of the Washington State Securities Act (Ninth Cause of Action)*

For the reasons stated *supra* denying summary judgment for Plaintiffs' federal cause of action concerning fraud in the sale of securities, summary judgment will likewise be DENIED as regards the similar state cause of action.

*Declaratory Judgment (Tenth Cause of Action)*

The portion of this cause of action consisting of a request for "a declaration that Defendants reconvey all of BigTip's assets back" has already been dismissed as an impermissible derivative claim.  The remainder of Plaintiffs' declaratory judgment request consists of "Plaintiffs' desire [for] a judicial determination of Plaintiffs' rights and duties." (SAC at ¶ 94.)  As expressed earlier, the Court is at somewhat of a loss to understand what is sought to be accomplished through this declaration that would not already be accomplished through Plaintiffs' other claims.

However, as the grounds stated in justification for the summary judgment request regarding this claim are the same as those stated for the fiduciary duty, unjust enrichment and fraudulent conveyance causes of action, the motion will be DENIED as regards this claim, also. Plaintiffs have established a colorable claim to rights which will be adjudicated through those causes of action.

1 *The amount of Plaintiffs' damages*

2      In the final portion of their briefing, Defendants argue for summary judgment concerning

3 a limit on the amount of Plaintiffs' damages (which are requested in the SAC as "general,

4 special, incidental and consequential damages in the sum of $10,000,000;" SAC at 16).

5 Defendants assert that Plaintiffs have produced neither facts nor legal theory in support of this

6 claim.

7      Plaintiffs make no response to this argument. The Court agrees with Defendants, and

8 GRANTS their summary judgment request that Plaintiffs' damages will be limited to the amount

9 to which their contract and the causes of action they have successfully plead entitle them.

10

11 **Conclusion**

12      In the interest of clarifying the impact of this ruling, the Court provides a table of the

13 causes of action and the Defendants against which Plaintiffs may proceed:[10]

14

| ⇩ **Claims // Parties**⇒ | **Rowlen** | **BigTip** | **WhoToo** | **Demandbase** |
|---|---|---|---|---|
| 1. 10(b)/10-b5 | | | Dismissed | Dismissed |
| 2. 20(a) | | | Dismissed | Dismissed |
| 3. Fraud | | | Dismissed | Dismissed |
| 4. Breach of contract | | | Not alleged | Not alleged |
| 5. Conversion | Dismissed | Dismissed | Dismissed | Dismissed |
| 6. Breach of fiduciary duty | | Not alleged | Not alleged | Not alleged |
| 7. Unjust enrichment | | | | Dismissed |
| 8. Fraudulent conveyance | | | | Dismissed |
| 9. WSSA | | | Dismissed | Dismissed |
| 10. Declaratory judgment | Partially struck | Partially struck | Partially struck | Dismissed |

22

23 _____

[10] The total dismissal of Demandbase is based on the 12(c) motion and Demandbase's own motion for summary judgment (*see* Order at Dkt. No. 220.)

24

The clerk is ordered to provide copies of this order to all counsel.

Dated:  April 3, 2018.

The Honorable Marsha J. Pechman
United States Senior District Court Judge